1

2

3

4

5

6

7

8                             IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARK JAY BAKER,

11                 Petitioner,                  No. CIV S-S-08-0311 FCD DAD P

12        vs.

13   C. KRAMER,

14                 Respondent.                  FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for five years at his ninth parole

19   consideration hearing held on April 19, 2006.  Upon careful consideration of the record and the

20   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

21   relief be denied.[1]

22   _____

23        [1] Respondent requests the substitution of Michael S. Evans, Warden of Folsom State
     Prison, as the correct respondent in this matter.  At the time of this request, petitioner was
24   incarcerated at Folsom State Prison.  The court has independently verified that petitioner is
     currently held at the California Substance Abuse Treatment Facility.  Accordingly, the court now
25   substitutes in the correct respondent, the Warden of the California Substance Abuse Treatment
     Facility.  See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) ("A
26   petitioner for habeas corpus relief must name the state officer having custody of him or her as the
     respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254.

                                                1

1    PROCEDURAL BACKGROUND

2          Petitioner is confined pursuant to a judgment of conviction entered in the Orange

3    County Superior Court in 1978.  (Pet. at 2.)  Petitioner pled guilty to first degree murder, in

4    violation of Cal. Penal Code § 187 and on October 19, 1978, was sentenced to a state prison term

5    of seven years to life with the possibility of parole.  (Id.)[2]

6          Petitioner's ninth parole consideration hearing, which is placed at issue by the

7    instant petition, was held on April 19, 2006.  (Pet., Ex. A.)  On that date, a Board panel found

8    petitioner not suitable for release and denied him parole for five years.  (Id. at 90.)

9    FACTUAL BACKGROUND

10         The Board described the facts of petitioner's commitment offense at his first

11   subsequent parole suitability hearing in 1985, as follows:

12         The life crime was a cold and callous act in which the prisoner
           drove the victim to a desolate area at the – at the beach park,
13         during the early morning hours under the pretense of completing a
           drug transaction.
14
           Upon arrival at the beach, the victim and the prisoner walked away
15         from the automobile onto the beach where the prisoner bludgeoned
           the victim to death with the barrel portion of a shotgun.
16
           The victim was then robbed of his money and left partially covered
17         by bushes on the beach..

18         In an effort to avoid detection, the prisoner threw the murder
           weapon into a park lake.
19
           The prisoner planned the robbery over a one week period with the
20         intent to kill the victim in order to avoid apprehension of aforesaid
           robbery.
21

22   (Pet., Ex. F2, at pages marked 151-52.)

23   /////

24   _____

25         [2] Petitioner informs the court that he also pled guilty to "grand theft" and was sentenced
     on that charge to twenty-four months in state prison, to be served concurrently with his sentence
26   on the murder charge.  ("Ancillary Petition for Habeas Corpus" attached to Pet. (hereinafter
     ancillary petition) at 4, 8.)

2

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

<u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008).  <u>See also</u> <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II.  Timeliness of Petition

Respondents argue that the claims contained in the habeas petition now pending before this court are barred by the statute of limitations set forth in 28 U.S.C. § 2244(d). (Answer at 4-5.)  For the following reasons, this court finds that the pending petition was timely-filed.

A.  Statute of Limitations and Tolling Provision Under the AEDPA

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  The AEDPA imposed a one-year statute of limitations on the filing of federal habeas petitions.  Title 28 U.S.C. § 2244 provides as follows:

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

(d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute of limitations for habeas petitions challenging parole suitability hearings is based on § 2244(d)(1)(D): the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.  See Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003).  "Courts ordinarily deem the factual predicate to have been discovered the day the decision becomes final, i.e., 120 days after the Board finds a petitioner not suitable for parole." Wilson v. Sisto, No. Civ. S-07-0733 MCE EFB P, 2008 WL 4218487, at *2 (E.D. Cal. Sept. 5, 2008) (citing Nelson v. Clark, No. 1:08-cv-00114 OWW SMS HC, 2008 WL 2509509, at *4 (E.D. Cal. June 23, 2009)).  See also Stotts v. Sisto, No. CIV. S-08-1178-MCE-CMK-P, 2009 WL 2591029, at *4 (E.D. Cal. Aug. 20, 2009); Van Houton v. Davison, No. CV 07-05256 AG (AN), 2009 WL 811596, at *9 (C.D. Cal. March 26, 2009); Woods v. Salazar, No. CV 07-7197 GW (CW), 2009 WL 2246237, at *5 & n.9(C.D. Cal. Mar. 23, 2009) (citing cases); Perez v. Sisto, No. Civ. S-07-0544 LKK DAD P, 2007 WL 3046006, at *4 (E.D. Cal. Oct.18,

1   2007); Cal. Code Regs., tit. 15, § 2041(h) (Board decisions are final 120 days after the hearing);

2   Cal. Penal Code § 3041(b) (same).  Contra McGuire v. Mendoza-Powers, No. 1:07-CV-00086

3   OWW GSA HC, 2008 WL 1704089, at *10 (E.D. Cal. April 10, 2008) (deeming factual

4   predicate to have been discovered on the date of the Board decision).  Following the majority of

5   district courts to have considered this issue, the undersigned concludes that the factual predicate

6   of petitioner's claims was "discovered" when the Board's decision denying parole became final

7   on August 17, 2006.

8          The AEDPA statute of limitations is tolled during the time a properly filed

9   application for post-conviction relief is pending in state court.  28 U.S.C. § 2244(d)(2).  A state

10  court application for post-conviction relief is "pending" during the entire time the petitioner is

11  attempting, through proper use of state court procedures, to present his claims.  See Nino v.

12  Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  A petition is not "pending" during an unreasonable

13  delay between state court applications.  Carey v. Saffold, 536 U.S. 214, 225 (2002).

14         In California, a prisoner seeking collateral review must file a habeas petition

15  within a reasonable time.  Saffold, 536 U.S. at 222-23.  Because there has been no explanation

16  from the California Supreme Court as to the meaning of "reasonable time," where the issue has

17  not been addressed by the state court, federal courts must now "examine the delay in each case

18  and determine what the state courts would have held in respect to timeliness."  Evans v. Chavis,

19  546 U.S. 189, 198 (2006).  Thus, if the state court does not explicitly deny a post-conviction

20  application as untimely, the federal court must independently determine whether there was

21  unreasonable delay between state court applications that would render the federal application for

22  habeas relief untimely.  Saffold, 536 U.S. at 226-27.

23      B.  Factual Background

24         For purposes of statute of limitations analysis, the relevant chronology of this case

25  is as follows:

26  /////

1    As set forth above, petitioner's ninth parole consideration hearing was held on

2  April 19, 2006.  (Pet., Ex. A.)  A Board panel found petitioner not suitable for parole and denied

3  parole for five years.  (Id.)  The Board's decision became final on August 17, 2006.  (Id. at 90.)

4    On June 29, 2007, petitioner filed a petition for a writ of habeas corpus in the

5  Orange County Superior Court, claiming that the Board's failure to find him suitable for parole at

6  his hearing held on April 19, 2006, violated his federal constitutional rights and his plea

7  agreement.  (Answer, Ex. 1.)  On August 1, 2007, the Superior Court rejected petitioner's claims

8  in a reasoned decision on the merits.  (Answer, Ex. 2.)

9    On approximately September 11, 2007, petitioner filed a habeas petition in the

10  California Court of Appeal for the Fourth Appellate District, in which he raised substantially the

11  same claims.  (Answer, Ex. 3.)  That petition was summarily denied by order dated October 25,

12  2007.  (Answer, Ex. 4.)

13    On November 5, 2007, petitioner filed a petition for review in the California

14  Supreme Court.  (Answer, Ex. 5.)  That petition was summarily denied by order filed January 3,

15  2008.  (Answer, Ex. 6.)   The instant petition was filed on February 11, 2008.

16    C.  Analysis

17    Petitioner was found unsuitable for parole at his April 19, 2006 suitability hearing.

18  As explained above, the one-year statute of limitations for the filing of a federal habeas petition

19  attacking that decision was triggered on August 17, 2006, when the suitability decision became

20  final.  Accordingly, the statute of limitations began to run the next day, on August 18, 2006.

21  Wilson, 2008 WL 4218487, at *3.

22    Petitioner challenged the Board's decision in a petition for writ of habeas corpus

23  filed in the Orange County Superior Court on June 29, 2007.  At that point, 316 days of the

24  limitations period had elapsed and petitioner had 69 days remaining within which to file his

25  federal habeas petition.  Because the state petition was properly filed, the statute of limitations

26  was tolled while this first state habeas petition was pending.  The petition was denied on August

1, 2007.

Petitioner then proceeded diligently to exhaust his state court challenges to the parole suitability hearing, waiting no longer than 40 days between the judgment with respect to each challenge and the initiation of another challenge.  Accordingly, the statute of limitations was tolled during the entire time that petitioner was attempting, through proper use of court procedures, to present his claims.  See Chavis, 546 U.S. at 192-93 (30-60 days is a  reasonable time period between filings and therefore tolls the statute of limitations); see also Warburton v. Walker, 548 F. Supp. 2d 835, 840 (C.D. Cal. 2008) (69-day delay found to be reasonable) White v. Ollison, 530 F. Supp. 2d 1077, 1083 (C.D. Cal. 2007) (76-day delay to resubmit petition on a proper form after Clerk of the Court refused to file it was not unexplained and was therefore subject to tolling); Bui v. Hedgpeth, 516 F. Supp. 2d 1170, 1174-76 (C.D. Cal. 2007) (83-day delay to conduct additional research and 158-day delay due to difficulties in obtaining photocopies properly tolled); Roeung v. Felker, 484 F. Supp. 2d 1081, 1084-85 (C.D. Cal. 2007) (six-month delay to conduct further research and expand petition properly tolled); Haynes v. Carey, No. Civ. S-07-0484 LKK DAD P, 2007 WL 3046008, *3-*5 & n.3 (E.D. Cal. Oct. 18, 2007) (170-day gap between denial of relief and filing of the next petition was explained by prison law library closures and library access limited by lock downs, staff meetings, training and schedule irregularities and therefore was subject to tolling); Burke v. Campbell, No. Civ. S-06-0459 FCD DAD P, 2006 WL 3589510 (E.D. Cal. Dec. 11, 2006) (significant delays explained by limited prison law library access, complexity of legal issues to be raised, serious medical conditions and other legal actions against which petitioner was forced to defend properly subject to tolling where respondent failed to rebut the explanations).[3]

/////

---

[3]  "[W]hether an unexcused delay, of greater than 30 to 60 days but less than six months, in filing a California state habeas petition would be considered 'reasonable' by the California court has been left to the lower federal courts to determine on habeas review."  Sigmon v. Kernan, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700 at *5 (C.D. Cal. May 27, 2009).

1        The California Supreme Court denied petitioner's final state court challenge to his

2   parole suitability hearing on January 3, 2008.  At that time, petitioner still had 69 days within

3   which to file a timely federal habeas petition attacking the Board's April 19, 2006 decision to

4   deny him parole.  See Lawrence v. Florida, 549 U.S. 327, 332 (2007) (a state court application

5   for post-conviction relief is not "pending" after the state post-conviction process is concluded).

6   The instant federal habeas petition was filed on February 11, 2008, well within the 69 day period.

7        For the foregoing reasons, petitioner's habeas petition was filed in this court

8   before the expiration of the statute of limitations set forth in 28 U.S.C. § 2254(d) and is therefore

9   timely.  Accordingly, below the court will address petitioner's claims on the merits.

10  III.  Petitioner's Claims

11       In his pending petition for federal habeas relief petitioner raises several arguments

12  challenging the Board's April 19, 2006, decision finding him unsuitable for parole.  Specifically,

13  he claims that: (1) the Board's decision violated his right to due process because it was "based on

14  irrelevant, immaterial, or unreliable reasons insufficient as 'some evidence;'" (2) the Board's

15  policy of denying parole "to nearly every first degree murder offender" violates "due process and

16  ex post facto law;" (3) the Board's decision denying him a parole date violates "due process and

17  ex post facto law" because it applied more onerous regulations to him than were in effect at the

18  time of his offense conduct and sentencing; and (4) the opposition of the District Attorney to a

19  favorable parole suitability decision violated the terms of his plea agreement and his right to due

20  process.  (Pet. at 5-6.)  The court will evaluate these claims in turn below.

21       A.  Due Process

22       Petitioner alleges that the Board's April 19, 2006 decision finding him unsuitable

23  for parole violated his right to due process under the United States Constitution.  (Pet. at 5;

24  Ancillary Petition at 9-17.)  Specifically, petitioner alleges that the Board improperly used the

25  unchanging facts of his commitment offense to determine whether he constitutes a current danger

26  to society.  (Id.)  Petitioner also argues that the other reasons cited by the Board in support of its

1   decision to deny him parole in 2006 were "highly questionable."  (Pet. at 5.)

2            The California Superior Court provided the last reasoned state court decision in

3   response to  petitioner's due process claim.  That court concluded as follows:

4            The petition is denied on the following grounds:

5            The California Supreme Court in In re Dannenberg (2005) 34
             Cal.4th 1061 held that the BPH "may protect public safety" by
6            "considering the dangerous implications" of the commitment
             offense.  (Id. at p. 1071.)  If the BPH determines the gravity of the
7            commitment offense "is such that consideration of the public safety
             requires a more lengthy period of incarceration," it may deny
8            parole without proceeding to consider and analyze the other
             suitability factors such as prison behavior and parole plans.  (Ibid.)
9
             Moreover, a BPH parole decision is subject to a limited judicial
10           review, and the applicable standard is whether "some evidence"
             supports it.  (In re Rosenkrantz (2002) 29 Cal.4th 616, 626; In re
11           Powell (1988) 45 Cal.3d 894, 902-904; In re Van Houten, (2004)
             116 Cal. App.4th 339, 347.)  This court is bound by the "some
12           evidence" standard.  (Auto Equity Sales, Inc. v. Superior Court
             (1962) 57 Cal.2d 450, 455 [all trial courts are bound by
13           nonconflicting decisions of all appellate courts].)  Thus,
             Petitioner's arguments about BPH practices, its treatment of Penal
14           Code section 3041, the BPH application of the California Code of
             Regulations, and opposition to his parole by the District Attorney
15           are irrelevant to the issue before this court.  The issue before this
             court is whether "some evidence" supported the BPH decision to
16           deny parole.  Penal Code section 3041, subdivision (b) controls.
             (In re Dannenberg, supra.)  It provides in part:  "The [BPH] shall
17           set a release date **unless** it determines that the gravity of the current
             convicted offense or offenses, or the timing and gravity of current
18           or past convicted offense or offenses, is such that consideration of
             the public safety requires a more lengthy period of incarceration for
19           this individual, and that a parole date, therefore, cannot be fixed at
             this meeting."  (Pen. Code, § 3041, subd. (b), emphasis added.)
20           Thus, if the BPH determines that consideration of public safety
             requires more incarceration, and its decision is supported by "some
21           evidence," it has not abused its discretion and a court will not
             disturb its decision.
22
             Here, there was ample support for the BPH decision.  Not only did
23           it rely on the brutal aspects of the murder, Petitioner had incurred
             multiple rule violations while imprisoned, all of which were related
24           to narcotics or controlled substances.  Thus, as the psychological
             evaluator noted in the 2005 report, "[G]iven the inmate's recent
25           positive urinalysis for methamphetamine, it appears he continues to
             have difficulty maintaining sobriety, even within a controlled
26           setting.  Therefore, it is doubtful that he would be able to do so in

the community without significant intervention and supervision."
Moreover, the evaluator did not find Petitioner to be entirely
honest.  Nor did the BPH.  It told Petitioner it was concerned about
the threat of recidivism due to his use of alcohol or other drugs and
his "difficulty with being totally honest" impacted his credibility
with the BPH.  Thus, while Petitioner had an excellent prison work
record and had been commended for saving the life of a guard,
"some evidence" supported the BPH conclusion.  (Pen. Code,
§3041, subd. (b); In re Dannenberg, supra, at p. 1071.)  Petitioner
therefore fails to show that the BPH abused its discretion in
denying parole.  (Ibid.)  The petition is denied on that basis.  (Ibid.)

The BPH's denial of parole was based on its assessment of
dangerousness which was supported by some evidence and was
therefore not an abuse of discretion.  The petition for a writ of
habeas corpus is DENIED.

(Pet., App. 1.)

### 1.  Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that

deprives a person of life, liberty, or property without due process of law.  One alleging a due

process violation must first demonstrate that he was deprived of a liberty or property interest

protected by the Due Process Clause and then show that the procedures attendant upon the

deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454,

459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002) (McQuillion I).

A protected liberty interest may arise from either the Due Process Clause of the

United States Constitution or state laws.  Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The

United States Constitution does not, of its own force, create a protected liberty interest in a parole

date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However, "a

state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release

will be granted' when or unless certain designated findings are made, and thereby gives rise to a

constitutional liberty interest."  McQuillion I, 306 F.3d at 901 (quoting Greenholtz v. Inmates of

Neb. Penal, 442 U.S. 1, 12 (1979)).

/////

1        California's parole scheme gives rise to a cognizable liberty interest in release on

2   parole, even for prisoners who have not already been granted a parole date.  Sass v. Cal. Bd. of

3   Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th

4   Cir. 2003); McQuillion I, 306 F.3d at 903; see also In re Lawrence, 44  Cal. 4th 1181, 1204,

5   1210, 1221 (2008).  Accordingly, this court must examine whether California provided the

6   constitutionally-required procedural safeguards when depriving petitioner of a protected liberty

7   interest and, if not, whether the Orange County Superior Court's conclusion that it did was

8   contrary to or an unreasonable application of clearly established federal law.

9        In this regard, it is clearly established federal law that a parole board's decision

10  deprives a prisoner of due process with respect to his constitutionally protected liberty interest in

11  a parole release date if the Board's decision is not supported by "some evidence in the record."

12  Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.

13  2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915.  "The 'some evidence' standard is

14  minimally stringent," and a decision will be upheld under that standard if there is any evidence in

15  the record that could support the conclusion reached by the factfinder.  Powell v. Gomez, 33 F.3d

16  39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also

17  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence

18  underlying the board's decision must have some indicia of reliability."  Jancsek v. Or. Bd. of

19  Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v. Estelle, 974 F.2d 1132, 1134

20  (9th Cir. 1992).  Determining whether the "some evidence" standard is satisfied does not require

21  examination of the entire record, independent assessment of the credibility of witnesses, or the

22  weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable

23  evidence in the record that could support the conclusion reached.  Id.

24       When assessing whether a state parole board's suitability decision was supported

25  by "some evidence," the analysis "is framed by the statutes and regulations governing parole

26  suitability determinations in the relevant state."  Irons, 505 F.3d at 851.  Therefore, this court

1   must:

2
> look to California law to determine the findings that are necessary
> to deem a prisoner unsuitable for parole, and then must review the
3   record in order to determine whether the state court decision
> holding that these findings were supported by "some evidence" in
4   [petitioner's] case constituted an unreasonable application of the
> "some evidence" principle articulated in <u>Hill</u>.
5

6   (<u>Id</u>.)

7          Under California law, prisoners serving indeterminate prison sentences "may

8   serve up to life in prison, but they become eligible for parole consideration after serving

9   minimum terms of confinement."  <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1078 (2005).  The Board

10  normally sets a parole release date one year prior to the inmate's minimum eligible parole release

11  date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and

12  magnitude in respect to their threat to the public."  <u>In re Lawrence</u>, 44 Cal. 4th at 1202 (citing

13  California Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that

14  the gravity of the current convicted offense or offenses, or the timing and gravity of current or

15  past convicted offense or offenses, is such that consideration of the public safety requires a more

16  lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal.

17  Penal Code § 3041(b).

18          In order to carry out the mandate of California Penal Code § 3041, the Board must

19  determine "whether the inmate poses 'an unreasonable risk of danger to society if released from

20  prison,' and thus whether he or she is suitable for parole."  <u>In re Lawrence</u>, 44 Cal. 4th at 1202

21  (citing California Code Regs., tit. 15, § 2281(a)).  In doing so, the Board must consider all

22  relevant, reliable information available regarding

23
> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
24  criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
25  after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
26  conditions under which the prisoner may safely be released to the

13

1        community; and any other information which bears on the
         prisoner's suitability for release.
2

3    Cal. Code Regs., tit. 15, § 2281(b).

4        The applicable regulations identify circumstances that tend to show suitability or

5    unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

6    have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has

7    no juvenile record of assaulting others or committing crimes with a potential of personal harm to

8    victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the

9    prisoner has performed acts that tend to indicate the presence of remorse or has given indications

10   that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime

11   as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from

12   having been victimized by battered women syndrome; (6) the prisoner lacks a significant history

13   of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the

14   prisoner has made realistic plans for release or has developed marketable skills that can be put to

15   use upon release; and (9) institutional activities indicate an enhanced ability to function within

16   the law upon release.  Cal. Code Regs., tit. 15, § 2281(d).

17       The following circumstances have been identified as tending to indicate

18   unsuitability for release: (1) the prisoner committed the offense in an especially heinous,

19   atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has

20   an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner

21   had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has

22   engaged in serious misconduct in prison.  Cal. Code Regs., tit. 15, § 2281(c).  Factors to consider

23   in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or

24   cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or

25   separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such

26   as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the

14

1  offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous

2  disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in

3  relation to the offense.  Id. § 2281(c)(1)(A) - (E).

4          The overriding concern in determining parole suitability in California is public

5  safety.  Dannenberg, 34 Cal. 4th at 1086.  This "core determination of 'public safety' . . .

6  involves an assessment of an inmates current dangerousness."  Lawrence, 44  Cal. 4th at 1205

7  (emphasis in original).  See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of

8  time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of

9  the panel the prisoner will pose an unreasonable risk of danger to society if released from

10  prison.")  Accordingly, under California law,

11              when a court reviews a decision of the Board or the Governor, the
             relevant inquiry is whether some evidence supports the decision of
12              the Board or the Governor that the inmate constitutes a current
             threat to public safety, and not merely whether some evidence
13              confirms the existence of certain factual findings.

14  Lawrence, 44  Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002);

15  Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

16          In recent years the Ninth Circuit Court of Appeals has concluded that, given the

17  liberty interest that California prisoners have in their release on parole, a continued reliance upon

18  an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a

19  violation of due process.  The court has addressed the issue in three significant cases, each of

20  which will be discussed below.

21          First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

22  reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could

23  at some point result in a due process violation.[4]  While the court in Biggs rejected several of the

24  reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld

25  _____

26          [4] That holding has been acknowledged as representing the law of the circuit.  Irons, 505
F.3d at 853; Sass, 461 F.3d at 1129.

three:  (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was

carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

cautioned that continued reliance solely upon the gravity of the offense of conviction and

petitioner's conduct prior to committing that offense in denying parole could, at some point,

violate due process.  In this regard, the court observed:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of Biggs' offense and prior conduct
> would raise serious questions involving his liberty interest in
> parole.

Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

contrary to the rehabilitative goals espoused by the prison system and could result in a due

process violation."  Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability

hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

461 F.3d at 1126.  Citing the decision in Biggs, the petitioner in Sass contended that reliance on

these unchanging factors to deny parole violated due process.  The court disagreed, concluding

that these factors amounted to "some evidence" to support the Board's determination and

providing the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and could result
> in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  Cf. id.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses

16

1

> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

2

3

4    Sass, 461 F.3d at 1129.

5              In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

6    stating as follows:

7

> Because the murder Sass committed was less callous and cruel than
> the one committed by Irons, and because Sass was likewise denied
> parole in spite of exemplary conduct in prison and evidence of
> rehabilitation, our decision in Sass precludes us from accepting
> Irons' due process argument or otherwise affirming the district
> court's grant of relief.

8

9

10

11

> We note that in all the cases in which we have held that a parole
> board's decision to deem a prisoner unsuitable for parole solely on
> the basis of his commitment offense comports with due process,
> the decision was made before the inmate had served the minimum
> number of years required by his sentence.  Specifically, in Biggs,
> Sass, and here, the petitioners had not served the minimum number
> of years to which they had been sentenced at the time of the
> challenged parole denial by the Board.  Biggs, 334 F.3d at 912;
> Sass, 461 F.3d at 1125.  All we held in those cases and all we hold
> today, therefore, is that, given the particular circumstances of the
> offenses in these cases, due process was not violated when these
> prisoners were deemed unsuitable for parole prior to the expiration
> of their minimum terms.

12

13

14

15

16

17

18

> Furthermore, we note that in Sass and in the case before us there
> was substantial evidence in the record demonstrating rehabilitation.
> In both cases, the California Board of Prison Terms appeared to
> give little or no weight to this evidence in reaching its conclusion
> that Sass and Irons presently constituted a danger to society and
> thus were unsuitable for parole.  We hope that the Board will come
> to recognize that in some cases, indefinite detention based solely
> on an inmate's commitment offense, regardless of the extent of his
> rehabilitation, will at some point violate due process, given the
> liberty interest in parole that flows from the relevant California
> statutes.  Biggs, 334 F.3d at 917.

19

20

21

22

23

24    Irons, 505 F.3d at 853-54.[5]

25    _____

26        [5]  The California Supreme Court has also acknowledged that the aggravated nature of the
commitment offense, over time, may fail to provide some evidence that the inmate remains a

2. <u>Analysis</u>

In addressing the factors it considered in reaching its 2006 decision that petitioner was at that time unsuitable for parole, the Board in this case stated as follows:

PRESIDING COMMISSIONER BRYSON:  Sir, the panel reviewed all information received from the public and from you and relied on the following circumstances in concluding that you are not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The offense was carried out in an especially cruel and callous manner in that you – your wife and the victim, Carl Marcus Chancellor, a 20 year old male, drove to a secluded McGill Beach Park near Dana Point, under the pretext of completing a drug transaction.  The offense was carried out in a dispassionate and calculated manner in that you had conspired with your wife to kill Chancellor.  While your wife remained in the car, you walked the victim on the beach, attempted to rob him using verbal threats. When the victim struggled with you, you bludgeoned him to death, using a shotgun barrel.  The offense was carried out in a manner demonstrating exceptionally callous disregard for human suffering, as evidenced in the autopsy report, which shows:

"The scalp was incised and reflected in the usual fashion, presents eggshell fracturing bilaterally of the calvarium, with a depressed fracture of the right temporal area, as well as a massive depressed fracture of the left front temporal area, an avulsion of brain through the calvarium deflect in the left [parietal and occipital] areas as photographed.  Portions of the fractured calvarium are removed, and there is bilateral subarachnoid hemorrhage, together with lateral inferior contusions.  The only remaining intact, non-fractured portion of the calvarium was that of the right occipital."

So you have a long history of prior criminality in your drug addiction, and by your own – by your own testimony here today, which started at approximately 11 years of age, with mari – marijuana.  As an 18 year old, you were convicted of a grand larceny in Florida for which you had – you were assessed five years' probation, which your present crimes show you failed society's attempts to previously – to correct your criminality, and

current threat to public safety.  <u>In re Lawrence</u>, 44  Cal. 4th at 1218-20 & n. 20.  Additionally, a recent panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

1    you definitely, by virtue of the crime itself, have an escalating
     pattern of criminal conduct.  As to your institutional adjustment,
2    you have programmed in a limited manner.  As we went over – as
     commissioner Cater went over today in your institutional behavior,
3    first of all, you came to the institution with a high school degree.
     You also attained 80 units of junior college work in California.  As
4    to your prison work, you have worked as a Housing Clerk by your
     own testimony for over seven years, and you've also in 19 – or
5    excuse me, 2005 been involved in the Community Service Program
     at China Hill, doing organic produce production, and this panel
6    recognizes that all of your most recent laudatory chronos have been
     – rated your work as exceptional, there's no question about it.
7    You're programming exceptionally with – as far as your work
     program goes in here, and you're to be commended for that.  As to
8    your vocational certifications, this panel believes there's some
     question as to the applicability of your vocational certifications to
9    your potential for employment outside this institution.  There is
     some concern about that; however, we addressed those concerns in
10   the hearing, and by your own testimony your experience as a Clerk
     over many years in prison would serve you well in – in working on
11   the outside in the capacity of a Clerk.  So that remains your – your
     goal for employment on the outside.  As to self-help and therapy,
12   you have participated over the years in a number of – of groups,
     and most recently in NA and AA through 2006.  You've also, as
13   we verified, participated in the Wisdom Group, and that was in
     2005, you've been involved in the Substance Abuse Program in
14   2004, Gray Stone Chapel, and you have again to be acknowledged
     and commended for in 1995 saving the life of a Folsom
15   correctional officer and for your other laudatory chronos.  There is
     little doubt that you have had a positive work and service record
16   inside, except that you do have serious disciplinary violations, and
     those include five 115s, the latest being in 2000 for a narcotics
17   violation: possession of controlled substance, that would be
     methamphetamine.  You also have four 128a's, that ended in 19 –
18   in the '90s with contraband involved.  So that suggests that in fact
     you have continued inside the prison setting a longstanding record
19   of drug addition.  As to the psychological reports, the most recent
     report by Dr. Wagner dated March 25th, 2005, does not support
20   release.  Dr. Wagner – Dr. Wagner's diagnostic impressions
     include an Axis I of amphetamine dependance in partial remission,
21   and an Axis V, Global Assessment of Functioning at 75.  This
     panel did note the remark by the psychologist that you were not
22   truthful when asked about your most recent 115 in that you
     attributed it to taking pain medications for your oral surgery.
23   Although Commissioner Cater did address that, sir, we feel that
     because the psychologist devotes a whole paragraph to this, she
24   was probably not inaccurate in her responses, her (indiscernible),
     and the question is, are you a reliable historian of your actual drug
25   addiction, and we – we will – that – that brings that into question,
     and basically I think that Commissioner Cater actually sufficiently
26   addressed that during the hearing.  We do point out that the – Dr.

Wagner's report does include an assessment of reduced potential for violence regarding your age, your minimal arrest history prior to the committing offense, and no significant acts of violence prior to the committing offense; however, considering the violent act that occurred regarding the life crime, the psychiatrist – excuse me, psychologist's assessment for potential violence is that you were considered average, and the psychologist points again for the – to the threat of recidivism due to the use of alcohol and illegal drugs, and concludes that you still have difficulty with being totally honest about your feelings, and that impacts your credibility, and it impacts your credibility with this panel here today.  As to your parole plans, you do not have viable residential parole plans in the last county of legal residence in California, and for that matter, anywhere in California, and you don't have acceptable employment plans presented here today anywhere in California.  You do have plans that you apparently are still making for Indianapolis.  We've discussed that – how that needs to be handled for future Board presentations.  As to Penal Code 3042 responses, responses indicate opposition to finding of parole suitability, specifically by the District Attorney of Orange County.  In a separate decision, the hearing panel finds it is not reasonable to expect that parole would be granted at a hearing during the following five years.  Specific reasons for this finding are as follows:  The offense was carried out in an especially cruel and callous manner in that you, your wife, and the victim, Carl Marcus Chancellor, a 20 year old male, drove to a secluded McGill Beach Park near Dana Point under the pretext of completing a drug transaction.  The offense was carried out in a dispassionate and calculated manner in that you had conspired with your wife to kill Chancellor while your wife remained in the car.  You walked the victim on the beach and attempted to rob him, using verbal threats.  When the victim struggles with you, you bludgeon him to death, using a shotgun barrel, and I bring – strike that.  All right.  The offense was carried out in a manner demonstrating exceptionally callous disregard for human suffering in that, according to the autopsy report:

"The scalp was incised and reflected in the usual fashion, presenting an eggshell fracturing bilaterally of the calvarium, with a depressed fracture of the right temporal area, as well as a massive depressed fracture of the left frontal temporal area and avulsion of brain through calvarium defect in the left parietal occipital areas as photographed.  The only remaining intact non-fractured portion of the calvarium was that of the right occipital."

Moreover, sir, you did – you did calculate this crime.  You had a weapon with you that you did indeed use.  The motive for the crime was very trivial in relation to the offense.  It was basically to get money for drugs.  In addition, you stole 2,500 dollars from the victim's body.  So drugs were paramount in your crime.  We don't have a recovering addict here; we have an addict.  The positive behaviors shown in prison does not outweigh the factors of

unsuitability, including your recent demonstrated inability to
follow the most basic rules of incarceration, and your narcotic
addiction has played a large part in the instant crime.  It shows that
you can't follow those rules, and therefore you continue to be a
threat to public safety.  Sir, in – one moment.  All right, in denying
you parole for five years, we're placing you on the 2011 calendar
for your next Subsequent Hearing.  If this decision is final, you will
not get paroled.  The Board will send you a copy of the decision.  It
will indicate the reasons you did not get paroled.  If this decision is
not final, the Board will set up another hearing.  You can read the
laws about your hearing in the California Code of Regulations,
Title 15, Section 2041.  The Board recommends no more 115s or
128a's, get self-help; upgrade your trades, we feel that's important;
get therapy, we feel you also need that; and earn positive chronos.
And Commissioner Cater, do you have anything further?

DEPUTY COMMISSIONER CATER:  Yes.  I wanted to address,
Mr. Baker, the appearance that you're living a – a double life here
in the state prison system.  By double life, I mean someone who is
an excellent worker, someone who has the support, the confidence,
the trust of countless staff members, the number of laudatory
chronos we saw is far above average; yet, in your inner self and
because of your drug addiction, you have this other secret life of
seeking and using drugs.  You've participated in self-help – self-
help, NA, AA and so forth, but as Commissioner Bryson indicated,
that your credibility with this panel is poor, and you need to
understand if you're going to continue to live – live this double
life, those impressions, those positive impressions you're made on
staff in the institution, that credibility has to be eroding as we
speak.  That's all.

(Pet., Ex. A at 80-89.)

        After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and

<u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to

federal habeas relief with respect to his due process challenge to the Board's April 19, 2006,

decision denying him parole.  The Board's 2006 decision that petitioner was unsuitable for parole

and that his release would unreasonably endanger public safety was supported by "some

evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  The Board relied not only

on the circumstances of petitioner's offense of conviction but also his prior criminal history; his

history of drug addiction which continued in prison; his prison disciplinary convictions which

largely involved narcotics violations; and the most recent prison psychological report which did

1  not unreservedly support petitioner's release at that time.[6]  All of these reasons cited by the Board

2  are supported by the record before this court and constitute "some evidence" supporting the

3  Board's decision that petitioner was not yet suitable for release on parole.  Sass, 469 F.3d at

4  1129; Irons, 505 F.3d at 665.  Although petitioner has served many more than the minimum

5  number of years on his seven years to life sentence, this is not a case where a continued reliance

6  on an unchanging factor such as the circumstances of the offense in denying parole has resulted

7  in a due process violation.  Accordingly, petitioner is not entitled to relief on his claim that the

8  Board's failure to find him suitable for parole at his April 19, 2006 hearing violated his right to

9  due process.  Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.

10      B.  No Parole Policy

11          Petitioner also claims that he was denied parole as a result of an unlawful Board

12  policy "of denying parole to nearly every first degree murder offender."  (Pet. at 5.)  Petitioner

13  argues that the application of this policy in his case violated "due process and ex post facto."

14  (Id.)

15          The Ninth Circuit Court of Appeal has acknowledged that California inmates have

16  a due process right to parole consideration by neutral decision-makers.  See O'Bremski v. Maass,

17  915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a

18  Board that [is] free from bias or prejudice").  Accordingly, parole board officials owe a duty to

19  potential parolees "to render impartial decisions in cases and controversies that excite strong

20  feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v. Procunier, 641 F.2d

21  1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement of due

22  process."  In re Murchison, 349 U.S. 133, 136 (1955).  Petitioner is therefore correct that he was

23  _____

24      [6]  The Board also relied on petitioner's perceived lack of viable parole plans in California
    in denying him a parole date.  It appears to the court that petitioner has realistic parole plans in

25  Indiana, where his family lives, and that his family intends to support him in California until he is
    able to transfer to Indiana.  (Ancillary Petition at 29-30.)   Accordingly, the court does not find

26  that petitioner's lack of viable parole plans constitutes "some evidence" supporting the
    conclusion that he would pose a danger to society if released on parole.

1    entitled to have his release date considered by a Board that was free of bias or prejudice.

2    However, petitioner has submitted no evidence to demonstrate that the Board operated under a

3    no-parole policy or was otherwise biased against him at the time of his parole hearing in 2006.

4    Therefore, he is not entitled to federal habeas relief with respect to this claim.

5        C.   Ex Post Facto

6            Petitioner contends that the Board deprived him of due process by applying the

7    suitability criteria applicable under California's Determinate Sentencing Law to his case when he

8    was instead convicted under the Indeterminate Sentencing Law.  (Pet. at 6.)  This claim for

9    habeas relief is foreclosed by the decision in Connor v. Estelle, 981 F.2d 1032 (9th Cir. 1992), in

10   which the Ninth Circuit held that application of DSL, rather than ISL, suitability criteria does not

11   create a due process violation, because "[t]he ISL and DSL guidelines apply identical criteria in

12   determining parole suitability."  981 F.2d at 1034-35 (citing In re Duarte, 143 Cal. App. 3d 943,

13   951 (1983)).

14           Petitioner also argues that the Board, by relying on the immutable facts of his

15   crimes and past history and ignoring relevant evidence of parole suitability, has transformed his

16   sentence of life with the possibility of parole into a sentence of life without the possibility of

17   parole, in violation of the Ex Post Facto Clause.

18           The Constitution provides that "No State shall . . . pass any . . . ex post facto

19   Law."  U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States

20   Constitution if it:  (1) punishes as criminal an act that was not criminal when it was committed;

21   (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a

22   person of a defense available at the time the crime was committed.  Collins v. Youngblood, 497

23   U.S. 37, 52 (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the

24   definition of crimes or increase the punishment for criminal acts."  Himes, 336 F.3d at 854

25   (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)).  See also Cal. Dep't of Corr. v.

26   Morales, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated if: (1) state

23

1   regulations have been applied retroactively to a defendant; and (2) the new regulations have

2   created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.

3   Himes, 336 F.3d at 854.  Not every law that disadvantages a defendant is a prohibited ex post

4   facto law.  In order to violate the clause, the law in question must essentially alter "the definition

5   of criminal conduct" or increase the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433,

6   442 (1997).

7           Here, the Board has not increased petitioner's punishment.  Petitioner was

8   sentenced to a term of seven years to life in prison.  The sentence contemplates a potential life

9   term in prison – a grant of parole is not mandatory, but merely possible.  While petitioner might

10  have hoped or expected to be released sooner, the Board's decision to deny him a parole release

11  date has not enhanced his punishment or sentence.  Accordingly, petitioner is not entitled to

12  federal habeas relief with respect to this claim.

13          D.  Opposition of District Attorney

14          Petitioner claims that the Orange County District Attorney's Office violated his

15  plea agreement and his right to due process by opposing his release on parole at the April 29,

16  2006 suitability hearing.  Petitioner notes that he "pled guilty to a parolable sentence with the

17  agreement of the District Attorney."  (Pet. at 6.)  He argues that the District Attorney's

18  acquiescence in such a plea should preclude the District Attorney's Office from opposing parole

19  "based on the commitment offense and other facts known to him at the time of the plea."

20  (Ancillary Petition at 2.)  In this regard, petitioner explains:

21          The District Attorney had before him all of the relevant facts about
            [petitioner] and his (limited) criminal history at the time he agreed
22          to let him plead guilty to First Degree Murder and a parolable life
            sentence.  If the District Attorney wants to oppose parole on the
23          basis of post-conviction factors, that is his privilege, but he cannot
            oppose parole for the very reasons he agreed to the plea bargain in
24          the first place, i.e., a parolable sentence.

25  (Traverse at 30.)

26  /////

24

1          Plea agreements are contractual in nature and are construed using the ordinary

2    rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

3    2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

4    terms of the plea agreement but must construe any ambiguities against the government.  United

5    States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

6    significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

7    of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York,

8    404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

9    petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

10   970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

11          Petitioner has failed to demonstrate that the District Attorney's opposition to his

12   release on parole at the 2006 suitability hearing violated the terms of his plea agreement in the

13   underlying criminal case.  Notwithstanding the fact that the prosecutor allowed petitioner to

14   plead guilty to "a parolable life sentence," there is nothing in the record before this court which

15   reflects a promise by the Orange County District Attorney's Office that petitioner would be

16   released or granted parole at any particular time or at any time before the expiration of his life

17   term.  The decision of the state courts rejecting petitioner's claim for habeas relief in this regard

18   is not contrary to or an unreasonable application of federal law as set forth above, nor is it based

19   on an unreasonable determination of the facts of this case.  Accordingly, petitioner is not entitled

20   to federal habeas relief with respect to this claim.

21                                  CONCLUSION

22          For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

23   application for a writ of habeas corpus be denied.

24          These findings and recommendations are submitted to the United States District

25   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

26   one days after being served with these findings and recommendations, any party may file written

                                        25

1    objections with the court and serve a copy on all parties.  Such a document should be captioned

2    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3    shall be served and filed within seven days after service of the objections.  The parties are

4    advised that failure to file objections within the specified time may waive the right to appeal the

5    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6    DATED: March 17, 2010.

7

8    _____

9    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

10   DAD:8:
     baker311.hc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26